**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| **ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE.,** |
| **Plaintiff,** |
| **v.** |
| **UNITED STATES,** |
| **Defendant,** |
| **and** |
| **KINGTOM ALUMINIO S.R.L.,** |
| **Defendant-Intervenor.** |

**Before: Hon. Richard K. Eaton,**
**Judge**

**Court No. 22-00236**

<u>**ORDER**</u>

Upon consideration of Plaintiff Aluminum Extrusions Fair Trade Committee's ("AEFTC")
AEFTC's Rule 56.2 Motion for Judgment on the Agency Record and the accompanying
memorandum, and upon all other papers filed and proceedings had herein, it is hereby

**ORDERED** that AEFTC's motion is granted; and it is further

**ORDERED** that the final administrative determination issued by U.S. Customs and Border
Protection ("CBP") in EAPA Case No. 7550 is arbitrary, capricious, an abuse of discretion, and
otherwise not in accordance with law; and it is further

**ORDERED** that this action is remanded to CBP for proceedings consistent with this
Court's opinion.

Dated: _____            _____
New York, New York                                  Hon. Richard K. Eaton, Judge

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| **ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE.,** |
| **Plaintiff,** |
| **v.** |
| **UNITED STATES,** |
| **Defendant,** |
| **and** |
| **KINGTOM ALUMINIO S.R.L.,** |
| **Defendant-Intervenor.** |

**Before: Hon. Richard K. Eaton,**
**Judge**

**Court No. 22-00236**

## ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Plaintiff Aluminum Extrusions Fair Trade Committee ("AEFTC"), by and through its attorneys, respectfully moves for judgment on the agency record with respect to the final administrative determination issued by the U.S. Customs and Border Protection ("CBP"), Office of Trade, Regulations and Rulings in the *de novo* administrative review, pursuant to 19 U.S.C. § 1517(f), of the determination of evasion made by CBP's Office of Trade, Trade Remedy Law Enforcement Directorate, pursuant to 19 U.S.C. § 1517(c), in the Enforce and Protect Act investigation into Kingtom Aluminio SRL with respect to the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China, EAPA Case No. 7550. *See* Letter from W. Richmond Beevers, Chief, Cargo Security, Carriers & Restricted Merchandise Branch, Regulations and Rulings, OT, CBP, re: *Enforce and Protect Act ("EAPA") Case Number 7550;*

Ct. No. 22-00236

*Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 FR 30650 (May 26, 2011) and Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order, 76 FR 30653 (May 26, 2011); Kingtom Aluminio SRL; 19 U.S.C. § 1517* (June 29, 2022).

AEFTC respectfully moves, for the reasons explained in the accompanying memorandum, that this Court find that Regulations and Rulings' determination was arbitrary, capricious, and an abuse of discretion.   AEFTC further moves that the Court remand this determination to CBP for disposition consistent with the Court's opinion in this matter.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Aluminum Extrusions Fair Trade Committee*

Dated: April 25, 2023

NON-CONFIDENTIAL VERSION

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant,<br><br>and<br><br>**KINGTOM ALUMINIO S.R.L.,**<br><br>Defendant-Intervenor. | **Before: Hon. Richard K. Eaton, Judge**<br><br>**Court No. 22-00236**<br><br><u>**NON-CONFIDENTIAL VERSION**</u><br><br>**Business Proprietary Information Removed from Pages 3, 11, 17-18, 22-24, 27-28, 32-33** |

## <u>OPENING BRIEF OF PLAINTIFF</u>
## <u>ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE</u>

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Aluminum Extrusions Fair Trade Committee*

Dated: April 25, 2023

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    RULE 56.2 STATEMENT ................................................................................... 1

       A.     Administrative Decision Under Review ...................................................1

III.   ISSUES PRESENTED AND SUMMARY OF ARGUMENTS ........................ 2

       A.     Whether Regulations and Rulings' Failure to Address TRLED's
              Application of Adverse Inferences Renders its Reversal of the Evasion
              Determination Arbitrary, Capricious, and An Abuse of Discretion?.....................2

       B.     Whether Regulations and Rulings' Conclusion that There is Not
              Substantial Evidence to Support a Finding of Evasion is Arbitrary,
              Capricious, and An Abuse of Discretion?................................................2

IV.    STANDARD OF REVIEW ................................................................................ 4

V.     STATEMENT OF RELEVANT FACTS ........................................................... 5

VI.    ARGUMENT ................................................................................................... 13

       A.     Regulations and Rulings Failed to Adequately Address TRLED's Decision
              to Apply Adverse Inferences ................................................................14

              1.     Kingtom Used the Threat of Physical Violence to Prevent its
                     Employees from Speaking with CBP Officials at
                     Verification ................................................................................15

              2.     Kingtom Deleted Necessary Records and Prevented TRLED
                     from Verifying Critical Information .............................................17

       B.     Regulations and Rulings' Conclusion That There is Not Substantial
              Evidence to Support a Finding of Evasion is Erroneous ......................20

              1.     TRLED Found Widespread Discrepancies That Indicated
                     that Kingtom Could Not Have Manufactured 100% of the
                     Volume it Claimed in the Dominican Republic.........................21

              2.     TRLED Properly Relied on Kingtom's Ties to China ..............30

              3.     Regulations and Rulings Erred in Concluding That There
                     Was No Substantial Evidence of Evasion When It Previously
                     Relied on Similar Evidence ........................................................33

VII.   CONCLUSION ................................................................................................ 36

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Aircraft Indus., Inc. v. United States*,
    586 F.3d 1372 (Fed. Cir. 2009)..................................................................................4

*Altx, Inc. v. United States*,
    370 F.3d 1108 (Fed. Cir. 2004)..................................................................................6

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)......................................................................................................5

*Nippon Steel Corp. v. United States*,
    337 F.3d 1373 (Fed. Cir. 2003)................................................................................19

*SKF USA Inc. v. United States*,
    263 F.3d 1369 (Fed. Cir. 2001)...........................................................................5, 36

*Star Fruits S.N.C. v. United States*,
    393 F.3d 1277 (Fed. Cir. 2005)..................................................................................5

*Wheatland Tube Co. v. United States*,
    161 F.3d 1365 (Fed. Cir. 1998)..................................................................................4

**Statutes**

19 U.S.C. § 1677e(b) ....................................................................................................19

19 U.S.C. § 1517 ...........................................................................................................18

19 U.S.C. § 1517(a)(5) ...................................................................................................6

19 U.S.C. § 1517(c) ........................................................................................................6

19 U.S.C. § 1517(c)(3)(A) ............................................................................................14

19 U.S.C. § 1517(c)(3)(C) ............................................................................................14

19 U.S.C. § 1517(f) .........................................................................................................7

19 U.S.C. § 1517(g) .........................................................................................................4

19 U.S.C. § 1677e(a) .....................................................................................................18

19 U.S.C. § 1677m(d) ...................................................................................................18

Ct. No. 22-00236                                      NON-CONFIDENTIAL VERSION

Trade Facilitation and Trade Enforcement Act of 2015 Title IV ...............................5, 6

**Regulations**

19 C.F.R. § 165.1 ...........................................................................................................6

19 C.F.R. § 165.41 .........................................................................................................7

**Administrative Materials**

*Aluminum Extrusions from the People's Republic of China,*
    76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) ..........................................5

*Aluminum Extrusions from the People's Republic of China,*
    76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) ..........................................5

Letter from Brian M. Hoxie, Director, Enf't Operations Div., TRLED,
    CBP OT, re: *Notice of Initiation of Investigation and Interim Measures
    – EAPA Cons. Case 7423* (May 4, 2020).................................................................8

Letter from Joanna R. Stump, Acting Executive Director, Regulations & Rulings,
    OT, CBP, re: *Enforce and Protect Act ("EAPA") Consolidated Case Number
    7348; Aluminum Extrusions from the People's Republic of China:
    Antidumping Duty Order, 76 FR 30650 (May 26, 2011) and Aluminum
    Extrusions from the People's Republic of China: Countervailing Duty Order,
    76 FR 30653 (May 26, 2011); Florida Aluminum Extrusion LLC, Global
    Aluminum Distributor, LLC; Hialeah Aluminum Supply, Inc.; 19 U.S.C. §
    1517* (Mar. 18, 2021) ............................................................................7, 8, 33

Letter from Joanne R. Stump, Acting Executive Director, Regulations &
    Rulings, OT, CBP, re: *Enforce and Protect Act ("EAPA")
    Consolidated Case Number 7423; Aluminum Extrusions from the
    People's Republic of China: Antidumping Duty Order, 76 FR 30650
    (May 26, 2011) and Aluminum Extrusions from the People's Republic
    of China: Countervailing Duty Order, 76 FR 30653 (May 26, 2011);
    Florida Aluminum Extrusion LLC, Global Aluminum Distributor,
    LLC; Classic Metals Suppliers; Industrias Feliciano Aluminum, Inc.;
    JL Trading Corp.; Puertas y Ventanas, J.M., Inc.; H&E Home; 19
    U.S.C. § 1517* (June 4, 2021) ...........................................................8, 9, 34

Letter from Victoria Cho, Acting Director, Enf't Operations Div., TRLED, CBP
    OT, re: *Notice of Initiation of Investigation and Interim Measures – EAPA
    Cons. Case 7348* (Feb. 5, 2020).............................................................7, 18

Ct. No. 22-00236                                        NON-CONFIDENTIAL VERSION

## I.      INTRODUCTION

On behalf of Plaintiff Aluminum Extrusions Fair Trade Committee ("AEFTC"), we respectfully submit the following memorandum in support of AEFTC's Rule 56.2 motion for judgment on the agency record in this action.

## II.     RULE 56.2 STATEMENT

### A.      Administrative Decision Under Review

This action challenges the final administrative determination issued by the U.S. Customs and Border Protection ("CBP" or "Customs"), Office of Trade ("OT"), Regulations and Rulings ("Regulations and Rulings") in the *de novo* administrative review, pursuant to 19 U.S.C. § 1517(f), of the determination of evasion made by CBP OT Trade Remedy Law Enforcement Directorate ("TRLED"), pursuant to 19 U.S.C. § 1517(c), in the Enforce and Protect Act ("EAPA") investigation into Kingtom Aluminio SRL ("Kingtom") with respect to the antidumping ("AD") and countervailing duty ("CVD") orders on aluminum extrusions from the People's Republic of China ("China"), EAPA Case Number 7550.  The final determination by Regulations and Rulings was issued on June 29, 2022.  *See* Letter from W. Richmond Beevers, Chief, Cargo Security, Carriers & Restricted Merchandise Branch, Regulations and Rulings, OT, CBP, re: *Enforce and Protect Act ("EAPA") Case Number 7550; Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 FR 30650 (May 26, 2011) and Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order, 76 FR 30653 (May 26, 2011); Kingtom Aluminio SRL; 19 U.S.C. § 1517* (June 29, 2022), C.R. 89, P.R. 81 ("R&R Determination").[1]  This determination was not published in the Federal Register.

---

[1]      "C.R." denotes the document number in the Business Confidential Index for the administrative record filed in this action on September 20, 2022, ECF No. 20; "P.R." denotes the document number in the Public Document Index for the administrative record filed in this action on September 20, 2022, ECF No. 21.

Ct. No. 22-00236                                    NON-CONFIDENTIAL VERSION

III.    **ISSUES PRESENTED AND SUMMARY OF ARGUMENTS**

A.    **Whether Regulations and Rulings' Failure to Address TRLED's Application of Adverse Inferences Renders its Reversal of the Evasion Determination Arbitrary, Capricious, and An Abuse of Discretion?**

Yes.  The EAPA statute authorizes CBP to apply adverse inferences against a party that fails to cooperate by not acting to the best of its ability to comply with a request for information. The record shows that Kingtom failed to cooperate to the best of its ability at verification. Specifically, Kingtom prevented its employees from speaking with CBP officials at verification, clearly demonstrating a failure to cooperate.  In addition, Kingtom deleted certain records, preventing CBP from being able to verify certain information.  TRLED properly applied adverse inferences.  In reversing TRLED's determination of evasion, Regulations and Rulings failed to adequately address TRLED's findings that justified the application of adverse inferences.  As such, Regulations and Rulings' determination is arbitrary, capricious, and an abuse of discretion.

B.    **Whether Regulations and Rulings' Conclusion that There is Not Substantial Evidence to Support a Finding of Evasion is Arbitrary, Capricious, and An Abuse of Discretion?**

Yes.  First, Regulations and Rulings' conclusion that the discrepancies discussed in TRLED's determination do not have sufficient bearing on Kingtom's production capability and actual production to overcome the substantial evidence demonstrating actual and significant production in the Dominican Republic is contradicted by the record.  There were widespread discrepancies involving issues directly relevant to evaluating Kingtom's production capability and actual production.  These discrepancies meant that there was no reliable evidence that Kingtom produced the claimed aluminum extrusions and constituted substantial evidence in support of a finding of evasion, in addition to demonstrating that Kingtom's submissions were unreliable as a whole.  Regulations and Rulings failed to address most of these discrepancies, and for the few that it did address, it made unreasonable conclusions.

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

Second, having determined that there is substantial evidence that Kingtom did not produce all the aluminum extrusions imported, TRLED properly relied on the record evidence demonstrating Kingtom's ties to China to find that these imports included Chinese-origin extrusions.  Pursuant to its application of adverse inferences, TRLED relied on other record evidence to infer that the aluminum extrusions imported into the United States are of Chinese origin.  Regulations and Rulings failed to address TRLED's application of adverse inferences and summarily concluded that Kingtom's ties to China are not evidence of evasion.  Even without the application of adverse inferences, Kingtom's ties to China provide substantial evidence in support of a finding of evasion.  There is evidence of significant volumes of Chinese aluminum extrusions entering the Dominican Republic, which does not align with the small size of the market.  Because of the widespread discrepancies in Kingtom's records that that call into question whether it produced all the aluminum extrusions that Kingtom exported to the United States, CBP cannot confirm that none of the Chinese extrusions that entered the Dominican Republic were not commingled with any Dominican extrusions.  Moreover, there is record evidence that Kingtom purchased what it called "[          ]" from Chinese suppliers, but was unable to document what these purchases were and trace it to its books and records.  Thus, TRLED properly inferred that they were based on the strong ties to China.

Third, Regulations and Rulings' conclusion that the record does not provide substantial evidence of evasion is also arbitrary, capricious, and an abuse of discretion because the agency relied on similar, and overlapping, evidence to find that aluminum extrusions imported from Kingtom include transshipped or commingled Chinese aluminum extrusions.  In two prior investigations involving Kingtom, the agency relied on the same types of discrepancies in

production records and ties to China to find evasion.  Regulations and Rulings failed to provide

sufficient justification for treating similar situations differently.

## IV.    STANDARD OF REVIEW

19 U.S.C. § 1517(g)(2) states that in determining whether a determination of evasion under

19 U.S.C. § 1517(c) or administrative review under 19 U.S.C. § 1517(f) of the determination of

evasion is conducted in accordance with those subsections, the Court shall examine (1) whether

Customs fully complied with all procedures under 19 U.S.C. § 1517(c) and (f) and (2) whether any

determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law.  *See* 19 U.S.C. § 1517(g).

The statute does not define arbitrary and capricious.  The U.S. Court of Appeals for the

Federal Circuit ("Federal Circuit") has stated that "{c}ourts have found an agency's decision to be

arbitrary and capricious when the agency 'entirely failed to consider an important aspect of the

problem, offered an explanation for its decision that runs counter to the evidence before the agency,

or the decision is so implausible that it could not be ascribed to a difference in view or the product

of agency expertise.'"  *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir.

2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43

(1983)).  "Courts look for a reasoned analysis or explanation for an agency's decision as a way to

determine whether a particular decision is arbitrary, capricious, or an abuse of discretion."

*Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998) (citing *Burlington*

*Truck Lines, Inc. v. United States*, 371 U.S. 156, 167-68, 83 S. Ct. 239, 9 L.Ed.2d 207 (1962)).

While "{t}he scope of review under the 'arbitrary and capricious' standard is narrow and a court

is not to substitute its judgment for that of the agency," the agency must have "examine{d} the

relevant data and articulate{d} a satisfactory explanation for its action including a 'rational

Ct. No. 22-00236                                    NON-CONFIDENTIAL VERSION

connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *Burlington Truck Lines*, 371 U.S. at 168).  In addition, "{a}n agency action is arbitrary when the agency offer{s} insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001).

The Federal Circuit has also explained that "{a}n abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (citing *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004)).

## V.   **STATEMENT OF RELEVANT FACTS**

On May 26, 2011, the U.S. Department of Commerce ("Commerce") issued AD and CVD orders on aluminum extrusions from China (the "Orders").  *Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) (antidumping duty order); *Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (countervailing duty order).

The Enforce and Protect Act, Title IV, Section 421 of the Trade Facilitation and Trade Enforcement Act of 2015 was signed into law on February 24, 2016, to amend the Tariff Act of 1930 to add procedures for CBP to investigate claims of evasion of AD/CVD orders.  Trade Facilitation and Trade Enforcement Act of 2015 ("TFTEA"), Title IV, Section 421, codified at 19 U.S.C. § 1517.  Through EAPA, Congress expanded CBP's ability to investigate evasion of AD/CVD orders and protect U.S. Government revenue.  The TFTEA also mandated the creation of a Trade Remedy Law Enforcement Division within the Office of Trade, dedicated to the development and administration of policies to prevent and counter evasion, including policies

related to the implementation of EAPA, among other responsibilities.  Title IV, Section 411 of the

TFTEA; *see also* 19 C.F.R. § 165.1 (explaining that "TRLED" refers to "the Trade Remedy Law

Enforcement Directorate, Office of Trade, that conducts the investigation of alleged evasion under

{19 C.F.R. § 165}, and that was established as required by section 411 of the EAPA.").

EAPA directs CBP to make a determination, based on "substantial evidence," as to whether

merchandise covered by an AD or CVD order ("covered merchandise") was entered into the

customs territory of the United States through evasion.  19 U.S.C. § 1517(c).  "Evasion" is defined

as "entering covered merchandise into the customs territory of the United States by means of any

document or electronically transmitted data or information, written or oral statement, or act that is

material and false, or any omission that is material, and that results in any cash deposit or other

security or any amount of applicable {AD} or {CVD} duties being reduced or not applied with

respect to the merchandise."  *Id.* § 1517(a)(5).  "Substantial evidence" is not defined in the statute.

However, CBP has relied on Federal Circuit case law finding that "substantial evidence means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Letter from Brian M. Hoxie, Director, Enf't Operations, Div., TRLED, CBP OT, re: *Notice of*

*Determination as to Evasion* (Feb. 4, 2022), C.R. 86, P.R. 69, at 3 n.24 (citing *A.L. Patterson, Inc.*

*v. United States*, 585 Fed. App'x 778, 781-82 (Fed. Cir. 2014) (quoting *Consol. Edison Co. of N.Y.*

*v. NLRB*, 305 U.S. 197, 229 (1938))) ("TRLED Determination"); R&R Determination at 4 n.9

(citing *A.L. Patterson, Inc.*, 585 Fed. App'x at 781-82 (quoting *Consol. Edison Co. of N.Y.*, 305

U.S. at 229)).  Substantial evidence is "more than a mere scintilla," but "less than the weight of

the evidence."  *Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004).

Following a determination of evasion, the statute provides for an administrative review

process by which CBP will conduct a *de novo* review of the determination of evasion if requested

by the interested party that filed the allegation of evasion that resulted in the initiation of the investigation, or the interested party determined to have entered the covered merchandise through evasion. 19 U.S.C. § 1517(f). CBP's implementing regulations of EAPA tasked Regulations and Rulings with the responsibility of conducting the administrative review. *See* 19 C.F.R. § 165.41.

In addition to the underlying investigation, there were two prior EAPA investigations involving imports of aluminum extrusions from Kingtom in the Dominican Republic. First, on February 5, 2020, TRLED published notice of its initiation of an EAPA investigation against Global Aluminum Distributor, LLC ("Global"); Florida Aluminum Extrusion, LLC ("Florida"); and Hialeah Aluminum Supply, Inc. ("Hialeah"), with respect to their imports of aluminum extrusions from Kingtom. Letter from Victoria Cho, Acting Director, Enf't Operations Div., TRLED, CBP OT, re: *Notice of Initiation of Investigation and Interim Measures – EAPA Cons. Case 7348* (Feb. 5, 2020) at 1, *available at* https://www.cbp.gov/document/guidance/eapa-investigation-7348-global-aluminum-distributor-llc-florida-aluminum-extrusion ("EAPA 7348 NOI"). The allegation was filed by Ta Chen International Inc., an importer of Chinese aluminum extrusions. *Id.* at 2. On November 2, 2020, TRLED published its final determination of evasion, finding substantial evidence that the investigated importers imported Chinese-origin extrusions that were transshipped through the Dominican Republic. Memorandum to The File, re: *Adding Certain Documents to the Administrative Record* (Mar. 3, 2021), C.R. 6, P.R. 8, at Attachment 1, p. 1 ("EAPA 7348 TRLED Determination"). Regulations and Rulings affirmed this determination in full on March 18, 2021. Letter from Joanna R. Stump, Acting Executive Director, Regulations & Rulings, OT, CBP, re: *Enforce and Protect Act ("EAPA") Consolidated Case Number 7348; Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 FR 30650 (May 26, 2011) and Aluminum Extrusions from the People's Republic of China:*

*Countervailing Duty Order, 76 FR 30653 (May 26, 2011); Florida Aluminum Extrusion LLC, Global Aluminum Distributor, LLC; Hialeah Aluminum Supply, Inc.; 19 U.S.C. § 1517* (Mar. 18, 2021) at 13, *available at* https://www.cbp.gov/document/publications/eapa-case-7348-global-aluminum-distributor-llc-florida-aluminum-extrusion-0 ("EAPA 7348 R&R Determination"). The period of investigation ("POI") for EAPA 7348 was October 9, 2018 through November 2, 2020. EAPA 7348 TRLED Determination at 11.

Second, on May 4, 2020, TRLED published its notice of initiation of an EAPA investigation against Classic Metals Suppliers ("Classic"); Industrias Feliciano Aluminum, Inc. ("Industrias"); Global; Florida; H&E Home ("H&E"); JL Trading Corp. ("JL"); and Puertas y Ventanas J.M., Inc. ("Puertas") for their imports of aluminum extrusions from Kingtom. Letter from Brian M. Hoxie, Director, Enf't Operations Div., TRLED, CBP OT, re: *Notice of Initiation of Investigation and Interm Measures – EAPA Cons. Case 7423* (May 4, 2020) at 1, 3, *available at* https://www.cbp.gov/document/guidance/eapa-cons-case-7423-notice-initiation-investigation-and-interim-measures. On January 28, 2021, TRLED published its final determination of evasion, finding substantial evidence that the Importers imported Chinese-origin extrusions that were commingled or transshipped through the Dominican Republic. Memorandum to The File, re: *Adding Certain Documents to the Administrative Record* (Mar. 3, 2021), C.R. 6, P.R. 8, at Attachment 2, p. 1 ("EAPA 7423 TRLED Determination"). Regulations and Rulings affirmed this determination in full on June 4, 2021. Letter from Joanne R. Stump, Acting Executive Director, Regulations & Rulings, OT, CBP, re: *Enforce and Protect Act ("EAPA") Consolidated Case Number 7423; Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 FR 30650 (May 26, 2011) and Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order, 76 FR 30653 (May 26, 2011); Florida Aluminum Extrusion*

*LLC, Global Aluminum Distributor, LLC; Classic Metals Suppliers; Industrias Feliciano*

*Aluminum, Inc.; JL Trading Corp.; Puertas y Ventanas, J.M., Inc.; H&E Home; 19 U.S.C. § 1517*

(June 4, 2021) at 14, *available at* https://www.cbp.gov/sites/default/files/assets/documents/2022-Aug/EAPA%20Case%207423%20Final%20Administrative%20Determination.pdf ("EAPA 7423

R&R Determination").  The POI for EAPA 7423 was January 10, 2019 through January 28, 2021.

EAPA 7423 TRLED Determination at 6.

   With respect to the first case, EAPA 7348, in April 2022, in a consolidated action in this

Court instituted by Global and Hialeah to challenge the determination of evasion, the U.S.

Department of Justice ("Government") filed a motion for a voluntary remand for CBP to

reconsider the decision, which the Court granted.  Memorandum and Order, *Global Aluminum*

*Distributor LLC et al. v. United States*, Consol. Court No. 21-00198 (Ct. Int'l Trade Aug. 8, 2022),

ECF No. 102 at 5.[2]  In response, CBP reversed the initial finding of evasion and filed its remand

redetermination with the Court in June 2022.  *Id.*  No party contested the draft remand

redetermination before the agency or the final redetermination before the Court, and this Court

sustained the redetermination on August 8, 2022.  *Id.* at 5-6.

   With respect to the second case, EAPA 7423, in August 2022, in a consolidated action in

this Court instituted by H&E, Classic, Global, Industrias, Puertas, and JL to challenge the

determination of evasion, the Government filed a motion for a voluntary remand for CBP to

reconsider the decision.  Remand Redetermination, *H&E Home, Inc. and Classic Metal Suppliers,*

*et. Al v. United States*, Consol. Court No. 21-00337 (Ct. Int'l Trade Jan. 10, 2023), ECF No. 73 at

3.  In response, CBP reversed the initial finding of evasion and filed its remand redetermination

with the Court in January 2023.  *Id.* at 2.  AEFTC filed comments opposing CBP's draft remand

---

[2]    AEFTC was not a party to this action and could not participate.

redetermination. *Id.* at 20, at Addendum, p. 2.  The deadline for parties to file comments with this Court on the remand is pending, and AEFTC intends to file comments in opposition.

In the EAPA investigation at issue here, on February 2, 2021, TRLED initiated an investigation against Kingtom as the importer, in response to an allegation filed by AEFTC.  *See* Letter from Brian M. Hoxie, Director, Enf't Operations Div., Trade Remedy Law Enforcement DirectorateTRLED, CBP OT, re: *Notice of Initiation of Investigation and Interim Measures – EAPA Case 7550* (May 10, 2021), C.R. 9, P.R. 12, at 2, 8.  The POI for this investigation was January 8, 2020 through February 5, 2022.  TRLED Determination at 3.

AEFTC provided evidence indicating that while the prior investigations were pending, Kingtom became the importer of record for its exports to the United States, in place of its customers, to avoid AD and CVD duties and the resulting measures imposed in those investigations.  *See* Letter from Wiley Rein LLP to CBP, re: *Aluminum Extrusions from the People's Republic of China: Request for an Investigation under the Enforce and Protect Act* (Oct. 5, 2020), C.R. 1, P.R. 1, at 6-9 ("Allegation").  Among other evidence, AEFTC provided the following information indicating evasion:

- Evidence indicating that Kingtom did not have the capability to produce the types of extrusions exported (size and finishing), *see id.* at 14-19, Exhibits 12, 13, or the capacity to produce the volume exported, based on the operating machinery Kingtom appeared to have during the relevant periods.  *See id.* at 20-24, Exhibits 12, 13.

- Evidence indicating that the volume of Kingtom's exports of extrusions exceeded the volume that could have been produced during the relevant periods based on the quantity of billets that Kingtom could have produced from the volume of raw material imports (scrap aluminum and primary aluminum) into the Dominican Republic during the

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

relevant timeframe (assuming that all of these imports were consumed by Kingtom). Billets are produced in a cast house using primary aluminum and scrap and then extruded into profiles on an extrusion press. *Id.* at 25-27, Exhibit 12, 15. Because there is no primary aluminum production in the Dominican Republic and very little scrap aluminum, both must be imported. *Id.* at 25, Exhibit 12.

- Evidence indicating that Chinese exports of aluminum extrusions to the Dominican Republic had increased significantly since the time of Kingtom's establishment in the Dominican Republic, which did not align with the small size of the market for extrusions in the Dominican Republic. *Id.* at 12-13, Exhibit 9.

- Evidence regarding Kingtom's pricing structure, which further indicated evasion. For instance, [

] Kingtom's prices are [          ]% lower than [

]. In addition, AEFTC provided a cost model analysis of products similar to those that Kingtom appeared to have sold, reflecting what it would cost an extruder in the Dominican Republic to produce those products, which suggested that Kingtom was selling at prices substantially lower than its costs. Having managed [                                                              ] it was not possible to produce and sell extrusions at Kingtom's prices, providing further evidence indicating that Kingtom was supplementing any production with transshipped Chinese product. *Id.* at 27-28, Exhibits 7, 12.

Following initiation of the investigation, TRLED issued a questionnaire to Kingtom, requesting information related to corporate structure, accounting/financial practices, sales, and production, which the company filed on June 21, 2021. *See* TRLED Determination at 2; Letter from CBP, re: *EAPA Case Number 7550 Request for Information* (May 25, 2021), C.R. 10, P.R. 15, at 1. TRLED issued supplemental questionnaires to Kingtom, and AEFTC and Kingtom filed comments and factual information throughout the investigation. *See* TRLED Determination at 2. TRLED also placed on the record documents from the two prior EAPA investigations involving Kingtom on August 8, 2021, to which Kingtom submitted rebuttal information on August 23, 2021. *See id.* at 2-3.

TRLED conducted on-site verification of Kingtom's submissions from August 30, 2021 through September 2, 2021. *See id.* at 3. TRLED issued a report summarizing its verification on November 9, 2021. *See id.* AEFTC and Kingtom filed written arguments on November 29, 2021 and responses to written arguments on December 14, 2021. *See id.*

On February 4, 2022, TRLED issued a final determination, finding that substantial evidence demonstrates that the imports of aluminum extrusions at issue included Chinese-origin extrusions that were commingled or transshipped through the Dominican Republic. *See id.* at 1. TRLED found substantial evidence on the record that Kingtom did not produce all the aluminum extrusions that it imported. *Id.* at 19. In addition, TRLED applied adverse inferences for Kingtom's failure to cooperate to the best of its ability at verification and relied on other information on the record to conclude that the aluminum extrusions that Kingtom imported into the United States are of Chinese origin. *Id.*

Ct. No. 22-00236                                        NON-CONFIDENTIAL VERSION

On March 21, 2022, Kingtom filed a request with Regulations and Rulings for an administrative review of the determination, pursuant to 19 U.S.C. § 1517(f).[3]  R&R Determination at 4-5.  AEFTC filed a response to Kingtom's administrative review request on April 19, 2022. *Id.* at 5.  On June 29, 2022, Regulations and Rulings issued a decision reversing TRLED's determination of evasion, based on its conclusion that there is not substantial evidence to support a finding of evasion.  *Id.* at 11.  Regulations and Rulings found that Kingtom's actions did not warrant the application of adverse inferences.  *Id.* at 8.  In addition, Regulations and Rulings found that the discrepancies discussed in TRLED's determination do not have sufficient bearing on Kingtom's production capability and actual production to overcome the substantial evidence demonstrating actual and significant production in the Dominican Republic.  *Id.* at 11.

This appeal followed.

## VI.  **ARGUMENT**

The record demonstrates that TRLED conducted a thorough investigation, reviewing a massive record, and that its finding of evasion was supported by substantial evidence.  In contrast, Regulations and Rulings failed to address critical aspects of the record and TRLED's determination that go to the heart of the issue in this investigation – whether Kingtom actually manufactured in the Dominican Republic the aluminum extrusions imported into the United States. That Kingtom has some extrusion production capabilities is not at issue here.  What is at issue is that because of Kingtom's failure to cooperate, there were critical gaps in the record such that Kingtom could not demonstrate that it did not also supplement its Dominican production with Chinese extrusions.  As such, Regulations and Rulings' reversal of the determination of evasion

---

[3]     Kingtom resubmitted its request for review on a later date, to comply with the page limit set forth in CBP's regulations.  R&R Determination at 5 n.12.

Ct. No. 22-00236                                       NON-CONFIDENTIAL VERSION

was arbitrary, capricious, and an abuse of discretion.  First, Regulations and Rulings failed to adequately address TRLED's decision to apply adverse inferences.  Second, Regulations and Rulings' conclusion that there is not substantial evidence to support a finding of evasion is erroneous.

      **A.**      **<u>Regulations and Rulings Failed to Adequately Address TRLED's Decision to Apply Adverse Inferences</u>**

In conducting an EAPA investigation, the statute authorizes CBP to "use an inference that is adverse to the interests of" the party alleged to have imported the merchandise at issue through evasion if the agency finds that the party "has failed to cooperate by not acting to the best of {its} ability to comply with a request for information."  19 U.S.C. § 1517(c)(3)(A).  In making an adverse inference, the statute permits CBP to rely on the allegation pursuant to which the investigation was initiated; a determination by CBP in another investigation, proceeding, or other action regarding evasion; or any other available information.  *Id.* § 1517(c)(3)(C).  The record shows that Kingtom failed to cooperate to the best of its ability at verification.  Verification was an opportunity for Kingtom to demonstrate the reliability of its submissions and to demonstrate that it manufactured all the aluminum extrusions imported into the United States.  Kingtom failed verification, however.  There has not been a verification report like the one in this case in over a decade.  Kingtom prevented its employees from speaking with CBP officials at verification, clearly demonstrating a failure to cooperate.  In addition, TRLED was unable to verify information critical to evaluating whether Kingtom produced the claimed aluminum extrusions because Kingtom did not have the necessary records, and Kingtom even deleted certain records.  TRLED properly applied adverse inferences.  In contrast, Regulations and Rulings summarily concluded that Kingtom's actions did not warrant the application of adverse inferences without addressing TRLED's findings that justified the application of adverse inferences or by making unreasonable

conclusions.  Regulations and Rulings failed to consider an important aspect of the problem and made unreasonable conclusions that do not follow from the facts on the record.  As such its reversal of the determination of evasion is arbitrary, capricious, and an abuse of discretion.

>    1.     **Kingtom Used the Threat of Physical Violence to Prevent its Employees from Speaking with CBP Officials at Verification**

Kingtom failed to cooperate to the best of its ability with CBP's requests for information by preventing its employees from speaking with CBP officials at verification.  Specifically, TRLED explained in its determination that at verification Kingtom engaged in a campaign of intimidation to prevent the factory employees from speaking with CBP officials.  TRLED Determination at 18.  Kingtom used minders, whose apparent purpose was to intimidate workers into silence.  *Id.*; Letter from TRLED, re: *On-Site Verification Report EAPA Case No. 7550* (Nov. 9, 2021), C.R. 81, P.R. 57, at 15 ("Verification Report").  All members of the CBP team observed such intimidation tactics.  TRLED Determination at 18; Verification Report at 15.  In fact, eight local workers approached CBP officials at the end of verification and stated that they were instructed before CBP officials arrived to not speak with the officials or risk retaliation and, indeed, were terminated from employment for speaking with the officials.  TRLED Determination at 18; Verification Report at 18-19.  CBP officials observed an armed guard from the factory gate being escorted by a Chinese group leader to the area of the factory from which the eight terminated workers were.  TRLED Determination at 18; Verification Report at 18-19.  TRLED explained that due to safety concerns from the growing tensions, stories not coalescing, and the observed armed guard, CBP officials decided to conclude verification.  Verification Report at 18-19.  However, TRLED explained that while CBP officials were regrouping in private in a conference room, there was an altercation instigated by Kingtom's counsel forcing their way into the conference room,

not honoring the CBP official's request for privacy.  *Id.*  As a result, CBP officials obtained the outstanding exhibits and concluded the on-site verification process.  *Id.*

In short, Kingtom clearly failed verification.  This was not an accident.  If there was nothing to hide, there would be no need to resort to threats of physical violence to hinder the verification. TRLED explained that Kingtom's tactics impeded its ability to conduct a proper investigation as it prevented the agency from getting a true and accurate picture of the inner workings of the company from primary sources, *e.g.*, the local factory workers.  TRLED Determination at 18-19. TRLED also noted that such tactics are a way of withholding information from the agency to obtain a favorable outcome.  *Id.*

While Regulations and Rulings acknowledged that the intimidation and questionable treatment of workers raised serious concerns,[4] it opined that there was no evidence that the presence of the workers on-site was fictitious, or that pertinent information was withheld or falsified by the workers.  R&R Determination at 11.  As such, Regulations and Rulings concluded that these observations and incidents do not rise to the level of undermining the facts relevant to whether there was evasion.  *Id.*  Regulations and Rulings misses the point.  CBP was attempting to determine whether there were enough employees to staff the shifts necessary to produce the volume of extrusions that were entering the United States.  By preventing CBP from speaking with the workers there was no way of knowing whether the employment records that CBP observed were accurate.  The workers were not the ones withholding or falsifying information.  The workers would have verified whether the employment records the company provided to CBP were accurate. Precisely because Kingtom instructed its employees to not speak with CBP officials, the agency

---

[4]      Beyond preventing its employees from speaking with CBP officials, the verification report detailed widespread questionable treatment by Kingtom of its local workers.  Verification Report at 15-16.

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

cannot know whether any additional pertinent information existed that Kingtom withheld or falsified. Regulations and Rulings' conclusion is not only obtuse, but it is also an entirely unreasonable interpretation of the facts. Kingtom clearly failed to cooperate to the best of its ability and TRLED's application of adverse inferences was appropriate.

### 2. Kingtom Deleted Necessary Records and Prevented TRLED from Verifying Critical Information

In addition, Kingtom's deletion of certain records prior to January 2020 would also warrant the application of adverse inferences, and Regulations and Rulings' failure to address this material record evidence renders its decision arbitrary, capricious, and an abuse of discretion.[5] TRLED Determination at 17-18. [                                        ] explained that Kingtom overhauled its accounting system in 2020, allegedly because everything was done in Excel in the old system, which was not keeping up with its growth and the EAPA investigation.[6] Verification Report at 4. [          ] stated that Kingtom deleted records prior to January 2020 because it "didn't see the point in keeping them." *Id.* But TRLED explained that Kingtom acted as an importer of record in 2019 and, as such, Kingtom was required to maintain such records under relevant CBP recordkeeping regulations. TRLED Determination at 18; Verification Report at 4 (noting that 19 U.S.C. § 163.4 states that importers must maintain records related to entries

---

[5] It is unclear whether TRLED considered Kingtom's deletion of records to be a separate reason justifying the application of adverse inferences, in addition to contributing to the substantial evidence supporting a finding of evasion. Nonetheless, Regulations and Rulings was required to address this issue, as it was material to TRLED's determination and Regulations and Rulings is required to conduct a *de novo* review. AEFTC also discussed Kingtom's deletion of records in its response to Kingtom's request for administrative review. Letter from Wiley Rein LLP to CBP, re: *HQ Case No. H324349, Administrative Review of EAPA Case No. 7550, Investigation into Kingtom Aluminio S.R.L.: Alleger's Response to Request for Administrative Review* (Apr. 19, 2022), C.R. 88, P.R. 76, at 19.

[6] It is unclear which EAPA investigation [          ] was referencing. *See* Verification Report at 4.

Ct. No. 22-00236                    BUSINESS PROPRIETARY INFORMATION        NON-CONFIDENTIAL VERSION
                                           HAS BEEN DELETED

for a period of five years from date of entry). In addition, Kingtom should have been aware that

its exports of aluminum extrusions were being investigated by CBP as early as February 2020,

when the initiation of the first EAPA investigation involving Kingtom was publicly announced.

EAPA 7348 NOI at 1. Indeed, [          ] expressly stated as one of the reasons for overhauling

its accounting system in 2020 was allegedly because the old system was not "keeping up with" *the*

*EAPA investigation*. In other words, Kingtom knowingly destroyed these records being aware that

its exports were subject to an investigation.

TRLED was unable to verify Kingtom's submissions due to this deletion of records. For

instance, Kingtom did not have payroll records prior to 2020. TRLED Determination at 17;

Verification Report at 16. In addition, TRLED explained that it was unable to verify Kingtom's

2019 financial statements or information that Kingtom submitted in the prior EAPA cases, which

TRLED placed on, and was part of, the record of this investigation. TRLED Determination at 18;

Verification Report at 4. In addition, because Kingtom did not have the necessary pre-2020

records available, TRLED had to use estimated calculations to assess the capacity of Kingtom's

extrusion machines. TRLED Determination at 17-18; Verification Report at 13.

The deletion of records is clearly a failure to cooperate to the best of one's ability. While

the standard for applying adverse inferences in an EAPA investigation is different from the

standard for applying adverse facts available in antidumping and countervailing duty proceedings,[7]

---

[7]     Unlike the EAPA statute, this statute contains additional requirements for Commerce and
the U.S. International Trade Commission ("ITC") before turning to facts otherwise available, prior
to applying an adverse inference in selecting from among the facts otherwise available, 19 U.S.C.
§ 1677e(a), in addition to requiring with respect to deficient submissions that if Commerce or the
ITC determines that a response to a request for information does not comply with the request, the
agency must inform the party submitting the response the nature of the deficiency and, to the extent
practicable, provide that party with an opportunity to remedy or explain the deficiency, 19 U.S.C.
§ 1677m(d); 19 U.S.C. § 1517.

Ct. No. 22-00236                                NON-CONFIDENTIAL VERSION

AEFTC submits that case law for the latter may be informative here.  Specifically, 19 U.S.C.

§ 1677e(b) contains similar language in providing Commerce and the ITC with authority to rely

on adverse inferences if an interested party "fail{s} to cooperate by not acting to the best of its

ability to comply with a request for information."  19 U.S.C. § 1677e(b).  The Federal Circuit has

explained in the context of such proceedings that:

> While the {"best of its ability"} standard does not require perfection and recognizes
> that mistakes sometimes occur, it does not condone inattentiveness, carelessness,
> or inadequate record keeping.  It assumes that importers are familiar with the rules
> and regulations that apply to the import activities undertaken and requires that
> importers, to avoid a risk of an adverse inference determination in responding to
> Commerce's inquiries: (a) take reasonable steps to keep and maintain full and
> complete records documenting the information that a reasonable importer should
> anticipate being called upon to produce; (b) have familiarity with all of the records
> it maintains in its possession, custody, or control; and (c) conduct prompt, careful,
> and comprehensive investigations of all relevant records that refer or relate to the
> imports in question to the full extent of the importers' ability to do so.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  The Federal Circuit

explained further that "{w}hile intentional conduct, such as deliberate concealment or inaccurate

reporting surely evinces a failure to cooperate, the statute does not contain an intent element."  Id.

at 1383.

Here, by deleting the records at issue, regardless of the claimed reason, Kingtom clearly

failed to cooperate to the best of its ability, also warranting the application of adverse inferences

on this basis.  Regulations and Rulings did not discuss Kingtom's deletion of records in its analysis.

Regulations and Rulings failed to examine the relevant data and failed to consider an important

aspect of the problem.  Again, Kingtom deleted records knowing that its exports were subject to

an EAPA investigation and despite the fact that it was required to maintain such records under

relevant CBP recordkeeping regulations as the importer of record.  The first EAPA investigation

involving Kingtom was publicly announced on February 5, 2020.  And Kingtom was represented

by counsel in that proceeding, who should be well aware of CBP's rules regarding the maintenance of records. Yet, at some point after that, Kingtom destroyed the records at issue. These include records that would have been used to verify Kingtom's employment numbers and shifts, to help evaluate the degree to which the amount of extrusions Kingtom claimed it produced it actually produced. Kingtom destroying its records and prohibiting its workers from speaking with CBP at verification is connected. At every turn where there was information that might undermine its story, Kingtom either destroyed evidence or intimidated its workers from speaking. Under no circumstances is this acting to the best of one's ability. Regulations and Rulings' reversal in this regard establishes a dangerous precedent that the actual destruction of evidence and witness intimidation is not enough to find that a company did not cooperate to the best of one's ability. If this does not rise to that level, what does? CBP routinely conducts on-site verifications of companies being investigated in EAPA proceedings. Regulations and Rulings' reversal was not only arbitrary and capricious, but it may also have made those verifications more dangerous by countenancing this type of behavior at verification.

In sum, Regulations and Rulings' reversal of TRLED's determination of evasion is arbitrary, capricious, and an abuse of discretion because the agency failed to adequately address TRLED's decision to apply adverse inferences.

### B.  <u>Regulations and Rulings' Conclusion That There is Not Substantial Evidence to Support a Finding of Evasion is Erroneous</u>

Regulations and Rulings is incorrect that there is not substantial evidence to support a finding of evasion, and its decision is arbitrary, capricious, and an abuse of discretion. First, Regulations and Rulings' conclusion that the discrepancies discussed in TRLED's determination do not have sufficient bearing on Kingtom's production capability and actual production, which it describes as the determinative factors in this case, to overcome the substantial evidence

demonstrating actual and significant production in the Dominican Republic is flatly contradicted by the record.   There were widespread discrepancies involving issues directly relevant to evaluating Kingtom's production capability and actual production.  These discrepancies meant that there was no reliable evidence that Kingtom produced the claimed aluminum extrusions and constituted substantial evidence in support of a finding of evasion, in addition to demonstrating that Kingtom's submissions were unreliable as a whole.  Regulations and Rulings failed to adequately address, or at all, many of these discrepancies.  The agency failed to consider an important aspect of the problem, made an unreasonable judgment in weighing relevant factors, and its conclusion does not follow from the facts.  Second, TRLED properly relied on Kingtom's ties to China to find evasion.  Regulations and Rulings' conclusion otherwise fails to acknowledge that TRLED relied on the record evidence of Kingtom's ties to China as part of its application of adverse inferences.  Regulations and Rulings failed to consider an important aspect of the problem.  Third, CBP relied on similar, and overlapping, evidence in finding evasion with respect to imports of aluminum extrusions from Kingtom in two prior EAPA investigations.   In changing its mind here, Regulations and Rulings treated similar situations differently without sufficient justification.

> **1.    TRLED Found Widespread Discrepancies That Indicated that Kingtom Could Not Have Manufactured 100% of the Volume it Claimed in the Dominican Republic**

TRLED found widespread discrepancies in Kingtom's records – both at verification and in Kingtom's submissions – that indicate that Kingtom's submissions are unreliable and that it did not manufacture in the Dominican Republic the aluminum extrusions imported into the United States. AEFTC highlights the most critical issues here.  These discrepancies involve issues directly relevant to evaluating Kingtom's production capability and actual production, including production, sales, employee attendance and payroll, raw material purchases/suppliers, and

BUSINESS PROPRIETARY INFORMATION          **NON-CONFIDENTIAL VERSION**
                                             HAS BEEN DELETED

financial records.  Such discrepancies would not be expected with legitimate production.  As discussed below, Regulations and Rulings failed to address much of these findings or the agency's conclusions are unreasonable.

*Production*

TRLED found discrepancies with respect to Kingtom's production records – both at verification and in Kingtom's submissions – that called into question the accuracy of the records and whether Kingtom actually produced the claimed aluminum extrusions:

First, at verification, TRLED reviewed ten work orders and found discrepancies between the quantities of aluminum extrusions that Kingtom allegedly produced and the quantities that left Kingtom's facility for the nine completed work orders.  *See* Verification Report at 5-9; *see also* TRLED Determination at 16.  Specifically, TRLED examined Kingtom's production records for consistencies in the production quantities between "Extrusion Output," "Packing Output," "Finished Product Outbound Details," and the commercial invoice.  *See* Verification Report at 6. For five of the ten orders, TRLED found that [                                                    ] than [            ], with the variance ranging from [  ] units to [      ] units.  *See id.* at 7-9 (for Work Orders 1, 6-8, and 10); *see also* TRLED Determination at 16.  For four orders, TRLED found that [

                                 ] than were [                               ], with the variance ranging from [  ] units to [    ] units.  *See* Verification Report at 7-9 (for Work Orders 2-5).  For the remaining order, Kingtom informed TRLED that the order had not left the warehouse due to the EAPA investigation.  *Id.* at 9.  In other words, for [                   ] work orders that TRLED examined at verification, there were inconsistencies in the quantities recorded in Kingtom's records, calling into question these production records.   Regulations and Rulings did not discuss these discrepancies in its analysis.

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED    **NON-CONFIDENTIAL VERSION**

Second, Kingtom's production records listed extrusion machines that Kingtom reported

[                                                            ] the production records.  TRLED Determination

at 12.   In other words, Kingtom was claiming that it [

].

While the production records are from dates prior to the POI of the underlying investigation,

TRLED explained that these discrepancies demonstrate that "Kingtom has a history of submitting

highly inaccurate, possibly fraudulent, submissions riddled with contradictions," which "casts

doubt on all Kingtom submissions in this proceeding." *Id.* at 13.  While TRLED is correct, this

evidence clearly shows that Kingtom was shipping more extrusions than could have been produced

on the machines available.  This corroborates the conclusion that Kingtom was commingling its

Dominican production with other Chinese extrusions.  Regulations and Rulings did not discuss

this issue in its analysis.

Third, AEFTC submits that the discrepancies regarding the sizing capabilities of

Kingtom's extrusion presses also raise questions as to whether Kingtom produced the claimed

aluminum extrusions.  As TRLED explained in its determination, AEFTC provided a declaration

from an industry expert that attested that based on their knowledge of the industry and the extrusion

presses that were observed operating at Kingtom's facility, Kingtom would not be able to produce

all the aluminum extrusions in the necessary sizes.[8]  *Id.* at 20.  For example, the size of the

aluminum profile on any given press is normally 1.5 inches less than the size of the press diameter,

in terms of width.  Allegation at Exhibit 12, p. 3.  But evidence showed that in [                    ],

---

[8]      This declaration was provided by [                    ], [                    ] of [
           ], an aluminum extruder that is a member of the Aluminum Extruders Council, and
who previously worked as [                    ] at [
                                                              ].  Allegation at Exhibit 13.

BUSINESS PROPRIETARY INFORMATION HAS BEEN DELETED     **NON-CONFIDENTIAL VERSION**

Kingtom sold [                          ] profiles that are 7 inches wide.  *Id.* at Exhibit 12, pp. 4-5,

Attachment 1.  To produce a 7-inch profile, a 9-inch press or larger would be needed.  *Id.* at Exhibit

12, p. 5.  But as of [                   ], Kingtom only had 4, 5, and 6-inch presses, in addition to the

cast house only having tables designed to produce billets for these size presses.  *Id.*  Cast house

tables are not easily changed without additional significant capital expenditures.  *Id.* at 16.  And

even now, the largest press that Kingtom has is an 8-inch press.  Verification Report at 12.  While

TRLED explained that Kingtom demonstrated its ability to extrude "selected molds" on its presses,

that does that mean that Kingtom could consistently and efficiently produce large shapes on

smaller presses.  TRLED Determination at 20.  As another industry expert declaration that AEFTC

provided explained:[9]

> Matching the billet diameter to the press tonnage is important in order to get the correct amount of unit pressure on the die face in order to efficiently extrude shapes. If the billet diameter (or "container size") is too high in relation to the tonnage, you are not left with enough "horsepower" in the press to extrude larger, complex, or thin-walled shapes.  There are also very practical limitations in trying to extrude a shape that is larger than the billet diameter.  If, for example, the Kingtom 2200 ton press is matched with a suitable 7" billet diameter, it would not be feasible to extrude a shape up to 12.598" in diameter.  It is possible that Kingtom has larger container sizes on its presses – for example, it may have an 8" billet on the 2200 ton press- but that would still limit the type of shapes it could run on that press.

Letter from Wiley Rein LLP to CBP, re: *Aluminum Extrusions from the People's Republic of China, EAPA Case 7550: Voluntary Factual Information and Comments on Kingtom's Questionnaire Responses* (Aug. 23, 2021), C.R. 69, P.R. 47, at Exhibit 1, p. 3.  These discrepancies as to the size and volume of aluminum

---

[9]      This declaration was provided by [                         ], [          ] of [
          ], an aluminum extruder that is a member of the Aluminum Extruders Council, who has worked in the aluminum industry for [                ].

extrusions that Kingtom could produce with its machinery raise further questions

as to whether Kingtom produced all the claimed aluminum extrusions.

*Employee Attendance and Payroll*

TRLED found at verification discrepancies with respect to Kingtom's employment records

or was unable to verify information related to employee attendance and payroll because Kingtom

did not have the necessary records.  In other words, TRLED was unable to determine whether

Kingtom's employees worked the necessary number of hours to support the claimed amount of

production.

- Kingtom did not have its original-source paper attendance records, and, thus, TRLED
  could not verify this information.  TRLED Determination at 17; Verification Report at
  16.  Kingtom claimed that it discards the paper records once the values are entered into
  Excel.  TRLED Determination at 17; Verification Report at 16.

- Even with the Excel records, Kingtom had no records prior to 2020, consistent with
  Kingtom's deletion of pre-2020 records.  TRLED Determination at 17-18; Verification
  Report at 16-17.  Kingtom claimed that it has no set time for which it retains the Excel
  records and that sometimes they are kept for two years.  TRLED Determination at 17-
  18; Verification Report at 16-17.  Notably, however, at the time of verification (which
  took place from August 30, 2021 through September 2, 2021), the earliest records that
  Kingtom had were from January 2020.  TRLED Determination at 3, 17-18; Verification
  Report at 16-17.

- While Kingtom told CBP officials that it has two 12-hour shifts per day, six days per
  week, the local attendance sheet that it provided for January 2020 had no hours
  recorded for a night shift.  TRLED Determination at 17; Verification Report at 16.  In

light of Kingtom's intimidation and refusal to allow its workers to speak with CBP verifiers, this inconsistency is extremely relevant.

- Kingtom provided inconsistent information at verification regarding its pay distribution procedures.  TRLED Determination at 17; Verification Report at 18.  In addition, CBP officials observed the procedure by which Kingtom pays wages to local workers, and the procedure had no accountability or way to trace such payments, which was also contradictory to Kingtom's statements.  TRLED Determination at 17; Verification Report at 18.

- While Kingtom claimed to use a facial recognition machine as one method of keeping track of local employees' timecards, it failed to provide a sample facial recognition report upon request.  TRLED Determination at 16; Verification Report at 16.  TRLED explained that Kingtom's failure to provide the facial recognition reports to corroborate the employee timecards indicates that the factory may not have been operating at the capacity claimed, and that this was important for the agency to be able to determine Kingtom's ability to produce the volumes of aluminum extrusions claimed.  TRLED Determination at 16.

Regulations and Rulings did not address these issues in its analysis.

*Raw Material Purchases/Suppliers*

There were discrepancies in the information that Kingtom submitted regarding its suppliers, which Kingtom had submitted in the prior EAPA investigations and TRLED placed on the record of this investigation.  *Id.* at 7-8.  As a result of these discrepancies, TRLED could not determine the true identities of Kingtom's suppliers and what materials these suppliers actually provided.  *Id.*  Specifically, while TRLED had requested from Kingtom a full list of its suppliers,

TRLED found [    ] additional suppliers that Kingtom did not identify while reviewing Kingtom's monetary transactions.  *Id.*  The descriptions for what was provided by the additional suppliers included [        ] terms such as "[          ]" and "[          ]" and there was no evidence to demonstrate what was actually supplied.  *Id.*

Regulations and Rulings' discussion of this issue misses the point.  Regulations and Rulings opines that Kingtom's sourcing information does not provide evidence of evasion because the items sourced from [         ] were [

                                                        ].  R&R Determination at 10.  It is unclear whether Regulations and Rulings was referencing the list as submitted by Kingtom or as compiled by TRLED based on Kingtom's records.  *Id.*  Either way, Regulations and Rulings failed to acknowledge the fact that TRLED found evidence of suppliers that Kingtom did not identify when expressly asked, and that there was no evidence to confirm what was actually supplied.  *See id.*

And at verification, TRLED was unable to verify information related to Kingtom's purchases from a Chinese supplier because Kingtom did not have the necessary records.  Specifically, while Kingtom made payments to a Chinese company [

                                                        ], allegedly for a vast array of raw materials and packaging supplies, as well as Kingtom's Chinese workers' wages, at verification CBP officials were unable to verify what portion of the bulk payments to [         ] was for supplies (including how much was paid for each item) and what portion of the payment was for employees' wages.  TRLED Determination at 9; Verification Report at 17.  [

                                                        ], explained that Kingtom transfers money to [        ] to pay for raw material invoices and Kingtom's Chinese employees' salaries but that there is no detail on the transferred amount entered as an accounts

BUSINESS PROPRIETARY INFORMATION   NON-CONFIDENTIAL VERSION
HAS BEEN DELETED

payable in Kingtom's financials as to what portion is allocated to payroll and what portion is applied to invoices.  Verification Report at 17.  Again, as a result, TRLED was unable to verify that what Kingtom actually purchased from this Chinese supplier.  Regulations and Rulings did not discuss this issue in its analysis.

*Financial Records*

TRLED also found discrepancies with respect to Kingtom's financial records or was unable to verify certain information because Kingtom did not have the necessary records.  As a result, TRLED was unable to confirm that Kingtom's financial transactions support Kingtom's claims with respect to purchases and production.  Regulations and Rulings did not discuss any of the above findings in its analysis.

First, TRLED found discrepancies between Kingtom's unaudited income statement and statement of financial position for 2020 that Kingtom submitted to TRLED in its RFI response compared to the versions TRLED reviewed at verification.  These included [

] the following line items: cost of sales, gross profit, net income and other comprehensive income, total assets, total liabilities, and total shareholders' equity.  TRLED Determination at 16; Verification Report at 10.  While TRLED did not find discrepancies between Kingtom's unaudited income statement and statement of financial position for 2019 that Kingtom submitted to TRLED in its RFI response compared to the versions that TRLED reviewed at verification, TRLED did find discrepancies between the versions at verification and the versions that Kingtom had submitted in EAPA 7348, which was also on the record of the underlying EAPA investigation. TRLED Determination at 16; Verification Report at 10.

Second, TRLED was unable to verify Kingtom's bank account information as submitted in the RFI responses because Kingtom did not provide original source documents from those

Ct. No. 22-00236                                                 NON-CONFIDENTIAL VERSION

banks.  TRLED Determination at 15-16; Verification Report at 5.  Kingtom claimed that it stopped

using the identified banks, allegedly due to bad service.  TRLED Determination at 15-16;

Verification Report at 5.

*Sales Process*

At verification, for the first time Kingtom (the Vice President of Sales) stated that it

occasionally receives calls from customers to purchase from inventory.  TRLED Determination at

10; Verification Report at 6.  This was contradictory to Kingtom's RFI response in the underlying

investigation, as well as in the two prior EAPA investigations, that its sales process was to produce

merchandise to order.  TRLED Determination at 10.  As TRLED explained, a company's sales

process is a critical factor in determining whether evasion is occurring.  *Id.*  If an item is sold from

inventory, it would require tracing by either determining the supplier or matching to Kingtom's

production records.  *Id.*  Maintaining inventory means that Kingtom could have an opportunity to

sell Chinese aluminum extrusions, or, at the very least, supplement its orders with commingled

Chinese product.  *Id.* at 11.  Indeed, Kingtom reported that it does not have a product catalog and

it is unclear how a customer would know how to order from inventory.  *Id.* at 10.  Because Kingtom

withheld this information until verification, it prevented TRLED from investigating this issue.

Thus, TRLED reasonably concluded that it is unable to confirm what Kingtom's sales process is

or rely on Kingtom's explanations of its sales process.  *Id.* at 11.

Regulations and Rulings' discussion of this issue misses the point.  Regulations and

Rulings is incorrect that Kingtom's statement that sometimes customers place an order from

inventory does not necessarily contradict Kingtom's assertion that it manufactures to order.  R&R

Determination at 11 n.33.  These statements are in direct contradiction to each other.  In this regard,

AEFTC notes that a customer purchasing from inventory is distinct from a customer placing an

Ct. No. 22-00236                                        NON-CONFIDENTIAL VERSION

order and that order (or the completed portion) sitting in inventory waiting to be shipped. Furthermore, Regulations and Rulings' claim that the existence of some sales from inventory does not equate to substantial evidence of evasion also misses the point. Kingtom's statement at verification directly contradicted its prior statements in the underlying investigation (as well as its statements in two prior cases), rendering its submissions regarding its sales process unreliable.

*Conclusion*

In sum, there were widespread discrepancies in Kingtom's submissions involving issues directly relevant to evaluating Kingtom's production capability and actual production. While there is not a threshold number of discrepancies that would be dispositive, given the widespread nature of these issues, TRLED properly concluded that there is substantial evidence that Kingtom did not produce all the aluminum extrusions imported. Regulations and Rulings' conclusion that the discrepancies discussed in TRLED's determination do not have sufficient bearing on Kingtom's production capability and actual production to overcome the substantial evidence demonstrating actual and significant production in the Dominican Republic is flatly contradicted by the record and, thus, arbitrary, capricious, and an abuse of discretion. And Regulations and Rulings' reversal of the determination of evasion without addressing most of these discrepancies also fails the standard of review because these are issues that go to the heart of the issue in this case – whether Kingtom had the production capability and did produce all the aluminum extrusions imported into the United States. Regulations and Rulings failed to grapple with the record evidence and made an unreasonable judgment in weighing relevant factors.

## 2.     TRLED Properly Relied on Kingtom's Ties to China

Having determined that there is substantial evidence that Kingtom did not produce all the aluminum extrusions it imported, TRLED properly relied on Kingtom's ties to China to find that

Kingtom's imports of aluminum extrusions include Chinese-origin extrusions. Regulations and Rulings summarily concluded that Kingtom's ties to China are not evidence of evasion. In doing so, Regulations and Rulings also failed to acknowledge that TRLED relied on the record information of Kingtom's ties to China as part of its application of adverse inferences due to Kingtom's failure to cooperate. Regulations and Rulings failed to provide a reasoned explanation for its decision and failed to consider an important aspect of the problem and thus, its decision is arbitrary, capricious, and an abuse of discretion.

TRLED relied on trade data that showed that Chinese aluminum extrusions were being imported into the Dominican Republic. TRLED Determination at 19. The data showed that in 2019 (after Kingtom started operations in the Dominican Republic in April 2018, contemporaneously with the Dominican Republic's recognition and initiation of trade relations with China) Chinese exports of aluminum extrusions to the Dominican Republic increased significantly, reaching a total of 38,618,990 pounds, a 39% increase compared to 2016, a 37% increase compared to 2017, and a 10% increase compared to 2018. In addition, since April 2018, Chinese exports of aluminum extrusions to the Dominican Republic through the end of 2018 increased by 31% compared to the same period in 2017. Allegation at 12-13, Exhibit 9. And from January through June 2020 (the date through which data was available at the time the allegation was prepared), Chinese exports of aluminum extrusions to the Dominican Republic remained significant, representing only a 3% decrease from the same period in 2018 despite a decrease in Chinese aluminum extrusions manufacturing due to the COVID-19 pandemic. *Id.* But AEFTC explained that the significant volume of Chinese exports of aluminum extrusions to the Dominican Republic did not align with the size of the market. Allegation at 12-13.

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED     **NON-CONFIDENTIAL VERSION**

TRLED also relied on information submitted by Kingtom showing that it imports various raw materials and supplies from companies based in China.  TRLED Determination at 19.  TRLED explained that it was unable to determine what actually was being imported because of Kingtom's failure to provide a consistent list of suppliers and a list of imported items.  *Id.*  And Kingtom only provided evidence of bulk payments to Chinese suppliers, such that TRLED was unable to trace these payments in bank statements provided by Kingtom or when reviewing Kingtom's records at verification.  *Id.*  In other words, TRLED could not confirm what these purchases from Chinese suppliers actually included.  *Id.*

AEFTC submits that even without the application of adverse inferences, Kingtom's ties to China provide substantial evidence that Kingtom's imports of aluminum extrusions include transshipped or commingled Chinese extrusions.  TRLED discussed additional record evidence demonstrating Kingtom's ties to China.  *Id.* at 6-10.  For instance, TRLED found that Kingtom is a company owned by Chinese nationals, run by Chinese workers, using Chinese suppliers, equipment, and raw materials, which allows for potential transshipment or commingling of Chinese aluminum extrusions.  *Id.* at 9.  TRLED also explained that during a separate U.S. Government visit to Kingtom's facility in 2018, Kingtom officials told U.S. government officials that [

].  *Id.* at 6.

This is relevant evidence that a reasonable might accept as adequate to support a conclusion.  There is evidence of significant volumes of Chinese aluminum extrusions entering the Dominican Republic, which does not align with the small size of the market.  Because of the widespread discrepancies in Kingtom's records that that call into question whether it produced all the aluminum extrusions that Kingtom exported to the United States, CBP cannot be confirm that

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

none of the Chinese extrusions that entered the Dominican Republic were not commingled with any Dominican extrusions. Again, there is record evidence that Kingtom purchased what it called "[          ]" from Chinese suppliers, but was unable to document what these purchases were and trace it to its books and records. Thus, TRLED properly inferred that the aluminum extrusions that Kingtom imported into the United States included transshipped or commingled Chinese extrusions. Notwithstanding, certainly with the application of adverse inferences, TRLED's reliance on Kingtom's ties to China to find evasion was even more appropriate.

###### 3.   Regulations and Rulings Erred in Concluding That There Was No Substantial Evidence of Evasion When It Previously Relied on Similar Evidence

Regulations and Rulings' conclusion that the record does not provide substantial evidence of evasion is also arbitrary, capricious, and an abuse of discretion because the agency previously relied on similar, and overlapping, evidence to find evasion. The agency did not provide sufficient justification for treating the similar situations differently. Specifically, the agency relied on the same types of discrepancies in production records and ties to China to find that imports of aluminum extrusions from Kingtom include transshipped or commingled Chinese aluminum extrusions in two prior investigations involving Kingtom.

For instance, in EAPA 7348, in upholding TRLED's determination of evasion Regulations and Rulings had agreed that "{w}hile Kingtom may have produced *some* of the aluminum extrusions it exported to the United States, the record does not support a finding that Kingtom produced *all* of the aluminum extrusions it exported." EAPA 7348 R&R Determination at 12 (emphasis in original).[10] And having determined that Kingtom did not produce all the aluminum

---

[10]   Again, CBP reversed the initial finding of evasion. No party contested the draft remand redetermination before the agency or the final redetermination before the Court, and this Court sustained the redetermination on August 8, 2022.

extrusions exported to the United States at issue, Regulations and Rulings relied on Kingtom's ties

to China as substantial evidence demonstrating that the imports from Kingtom included Chinese

aluminum extrusions.  Specifically, Regulations and Rulings found that:

> Given that the administrative record does not provide enough evidence to support
> the Importers' claims of Kingtom's actual production in relation to the quantity
> sold, the question of where the aluminum extrusions may have otherwise come
> from arises.  In this case, Kingtom does have strong ties to China.  The record
> evidence shows that Kingtom is both owned by Chinese citizens and employs many
> Chinese citizens.  Kingtom has also sourced both supplies and equipment from
> China.  The record does not indicate that Kingtom has any such ties to other
> countries not subject to AD/CV duty orders, nor does the record indicate Kingtom
> having ties to other aluminum extrusion manufacturers in the Dominican Republic
> who could have supplied additional merchandise to cover the full amount exported.
> Therefore, when looking at the totality of the circumstances regarding evidence of
> Kingtom's actual production levels coupled with Kingtom's affiliations with China,
> a finding of evasion due to the commingling of Chinese-origin aluminum
> extrusions with Dominican Republic-origin aluminum extrusions is supported by
> substantial evidence in the record.  There is more than a 'mere scintilla' of evidence
> to support this finding of evasion.

*Id.* at 12-13 (citations omitted).

Notably, Regulations and Rulings found that "even without adverse inferences, the record

fully and adequately supports the finding that Kingtom commingled Chinese-origin aluminum

extrusions with aluminum extrusions it produced in the Dominican Republic before exporting

shipments to the United States."  *Id.* at 13.

Similarly, in EAPA 7423, Regulations and Rulings also affirmed TRLED's determination

of evasion, again finding that "{w}hile Kingtom may have produced *some* of the aluminum

extrusions it exported to the United States, the record does not support a finding that Kingtom

produced *all* of the aluminum extrusions it exported."  EAPA 7423 R&R Determination at 14

(emphasis in original).  And having determined that Kingtom did not produce all the aluminum

extrusions exported to the United States at issue, Regulations and Rulings again relied on

Kingtom's ties to China as substantial evidence demonstrating that the imports of aluminum

extrusions from Kingtom included Chinese aluminum extrusions.  Specifically, Regulations and

Rulings found that:

> Given that the administrative record does not provide enough evidence to support
> the Importers' claims of Kingtom's actual production in relation to the quantity of
> aluminum extrusions sold, the question of where the aluminum extrusions may
> have otherwise come from arises.  In this case, Kingtom does have strong ties to
> China.  The record evidence shows that Kingtom is both owned by Chinese citizens
> and employs many Chinese citizens.  Kingtom has also sourced both supplies and
> equipment from China.  Furthermore, Kingom was established and began
> operations around the same time that the Dominican Republic established
> diplomatic ties with China.  The record does not indicate that Kingtom has any such
> ties to other countries not subject to AD/CV duty orders, nor does the record
> indicate Kingtom having ties to other aluminum extrusion manufacturers in the
> Dominican Republic who could have supplied additional merchandise to cover the
> full amount exported.  Therefore, when looking at the totality of the circumstances
> regarding evidence of Kingtom's actual production levels coupled with Kingtom's
> affiliations with China, a finding of evasion due to the commingling of Chinese-
> origin aluminum extrusions with Dominican Republic-origin aluminum extrusions
> is supported by substantial evidence in the record.  There is more than a 'mere
> scintilla' of evidence to support this finding of evasion.

*Id.* at 14 (citations omitted).[11]   In making its determination, in addition to considering the

information on the record in EAPA 7423, Regulations and Rulings also considered documents

from EAPA 7348 that had been placed on the record of EAPA 7423.  *Id.*

In this investigation, TRLED relied on the same type of evidence in finding evasion.  In

fact, the record of this case included Kingtom's submissions in EAPA 7348 and EAPA 7423.  But

this time, Regulations and Rulings decided that the discrepancies in Kingtom's submissions and

the same ties to China suddenly do not provide substantial evidence in support of a finding of

evasion.  Regulations and Rulings did not even acknowledge its prior findings.  As such,

Regulations and Rulings' conclusion is arbitrary, capricious, and an abuse of discretion because

---

[11]   Again, CBP reversed the initial finding of evasion and filed its remand redetermination
with the Court.  The deadline for parties to file comments with the Court on the remand is pending,
and AEFTC intends to file comments in opposition.

Ct. No. 22-00236                                    NON-CONFIDENTIAL VERSION

the agency treated similar situations differently without sufficient reason. *See SKF USA Inc.*, 263

F.3d at 1382.  The same type of evidence that Regulations and Rulings previously found sufficient

again provides substantial evidence in support of a finding of evasion here, as discussed above.

**VII.    CONCLUSION**

For the foregoing reasons, AEFTC respectfully requests that the Court find Regulations

and Rulings' determination to be arbitrary, capricious, and an abuse of discretion and remand the

decision for reconsideration consistent with the Court's opinion.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Aluminum Extrusions Fair
Trade Committee*

Dated:  April 25, 2023

36

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement.  The word count for AEFTC's Rule 56.2 Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2016), is 11,031 words.

*/s/ Robert E. DeFrancesco, III*
(Signature of Attorney)

Robert E. DeFrancesco, III
(Name of Attorney)

Aluminum Extrusions Fair Trade Committee
(Representative Of)

April 25, 2023
(Date)