IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

**Aluminum Extrusions Fair Trade Committee,**

Plaintiff,

v.

**United States,**

Defendant,

and

**Kingtom Aluminio S.R.L.,**

Defendant-Intervenor.

**PUBLIC VERSION**

**Before: Hon. Richard K. Eaton, Judge**

**Court No. 22-00236**

**Business Confidential Information Removed From Pages 10, 12, 15**

## DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

Of Counsel:

Tamari J. Lagvilava
Office of Chief Counsel
U.S. Customs and Border Protection

ALEXANDER VANDERWEIDE
Senior Trial Counsel
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. (212) 264-9230 or 0482
Attorneys for Defendant

Dated: August 23, 2023

# TABLE OF CONTENTS

BACKGROUND ..................................................................................................... 2

LEGAL STANDARD............................................................................................. 3

   I.   The Enforce And Protect Act.................................................................... 3

   II.   Standard of Review .................................................................................. 5

ARGUMENT .......................................................................................................... 6

   I.   R&R Properly Exercised Its Discretion To Not Apply Adverse Inferences ................... 6

   II.   The Record Does Not Contain Substantial Evidence of Evasion .................................... 8

     A.  The Record Does Not Contain Widespread Discrepancies Evidencing Evasion ............ 9

       *Production Records* ................................................................................ 10

       *Employee Attendance and Payroll*..................................................... 11

       *Raw Material Purchases/Suppliers* ................................................... 12

       *Financial Records*................................................................................ 12

       *Sales Process* ...................................................................................... 13

     B.  Kingtom's Chinese Ties Do Not Evidence Evasion .................................................. 14

     C.  R&R's Conclusion That There Is Not Substantial Evidence of Evasion Is Consistent With Other EAPA Investigations Into Kingtom ................. 15

CONCLUSION..................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*American Pacific Plywood, Inc. v. United States,*
Court No. 20-03914, 2023 WL 4288346 (Ct. Int'l Trade June 22, 2023) .................. 9

*Essar Steel Ltd. v. United States*,
678 F.3d 1268 (Fed. Cir. 2012)................................................................................ 6

*FPC v. Transcon. Gas Pipe Line Corp.,*
423 U.S. 326 (1976)................................................................................................. 6

i

*Global Aluminum Distributor LLC v. United States*,
Consol. Court No. 21-00198 .................................................................................. 16

*H&E Home, Inc. and Classic Metals Suppliers v. United States*,
Consol. Court No. 21-00337 .................................................................................. 16

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ................................................................................... 9, 14, 16

*PSC VSMPO-Avisma Corp. v. United States*,
688 F.3d 751 (Fed. Cir. 2012) .................................................................................. 6

*Royal Brush Mfg., Inc. v. United States*,
545 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ............................................................... 9

*SKF USA Inc. v. United States*,
263 F.3d 1369 (Fed. Cir. 2001) .................................................................................. 5

*Star Fruits S.N.C. v. United States*,
393 F.3d 1277 (Fed. Cir. 2005) .................................................................................. 5

*WelCom Prods., Inc. v. United States*,
865 F. Supp. 2d 1340 (Ct. Int'l Trade 2012) ............................................................... 5

*Wheatland Tube Co. v. United States*,
161 F.3d 1365 (Fed. Cir. 1998) .................................................................................. 5

**Statutes**

19 U.S.C. § 1517 ........................................................................................................ 1

19 U.S.C. § 1517(a)(5) ............................................................................................... 5

19 U.S.C. § 1517(b)(1) ............................................................................................... 4

19 U.S.C. § 1517(c)(1)(A) ....................................................................................... 4, 8

19 U.S.C. § 1517(c)(2) ............................................................................................... 4

19 U.S.C. § 1517(c)(3)(a) ........................................................................................... 7

19 U.S.C. § 1517(e) ................................................................................................... 4

19 U.S.C. § 1517(f) .................................................................................................... 5

19 U.S.C. § 1517(g)(1) ............................................................................................... 5

19 U.S.C. § 1517(g)(2) ............................................................................................... 5

The Trade Facilitation and Trade Enforcement Act of 2015,
Pub. L. No. 114-125, 130 Stat. 122 (2016).......................................................................3

The Enforce and Protect Act of 2015 (EAPA) .................................................*passim*

**Regulations**

19 C.F.R. § 165.21 .................................................................................................4

19 C.F.R. § 165.22 .................................................................................................4

19 C.F.R. § 165.23 .................................................................................................4

19 C.F.R. § 165.6 ................................................................................................7, 8

**Other Authorities**

*Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order,*
76 Fed. Reg. 30,650 (May 26, 2011) ......................................................................2

*Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order,*
76 Fed. Reg. 30,653 (May 26, 2011) ......................................................................2

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **Aluminum Extrusions Fair Trade Committee,**<br><br>                    **Plaintiff,**<br><br>          **v.**<br><br>**United States,**<br><br>                    **Defendant,**<br><br>          **and**<br><br>**Kingtom Aluminio S.R.L.,**<br><br>                    **Defendant-Intervenor.** | **PUBLIC VERSION**<br><br>**Before: Hon. Richard K. Eaton,**<br>       **Judge**<br><br>**Court No. 22-00236**<br><br>**Business Confidential Information Removed From Pages 10, 12, 15** |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiff, Aluminum Extrusions Fair Trade Committee (AEFTC).  ECF Nos. 32-34.  The AEFTC challenges, as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, U.S. Customs and Border Protection's (CBP) administrative review decision following an investigation pursuant to the Enforce and Protect Act (EAPA), 19 U.S.C. § 1517, that the agency record does not contain substantial evidence that defendant-intervenor Kingtom Aluminio S.R.L. (Kingtom) imported aluminum extrusions by means of evasion.  As set forth below, CBP's Regulations & Rulings (R&R) did not act arbitrarily, capriciously, or erroneously in concluding that there is not substantial evidence on the record to support a finding of evasion.

## I.      Administrative Determination Under Review

The AEFTC challenges CBP's administrative review decision in EAPA Case No. 7550, issued on June 29, 2022.  Confidential Admin. Rec. Doc (C.R.) No. 89 (R&R Review).

## II.     Issues Presented For Review

1.  Whether CBP's decision not to apply adverse inferences in the R&R Review was arbitrary, capricious, or an abuse of discretion.

2.  Whether CBP's conclusion in the R&R Review that the agency record does not contain substantial evidence of evasion is arbitrary, capricious, or an abuse of discretion.

## <u>BACKGROUND</u>

On May 26, 2011, the U.S. Department of Commerce issued antidumping duty order A-570-967 and countervailing duty order C-570-968, which set forth its determination that imports of Chinese-extruded aluminum are subject to antidumping and countervailing duties.  *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (May 26, 2011); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (May 26, 2011) (collectively, the Orders).

On February 2, 2021, CBP initiated a formal EAPA investigation in response to an allegation of evasion filed by the AEFTC, a committee of domestic producers of aluminum extrusions.  C.R. No. 86 (TRLED Determination).  The AEFTC alleged that Kingtom evaded the Orders by importing Chinese-origin aluminum extrusions into the United States that were transshipped through Kingtom's Dominican Republic facilities.  C.R. No. 9 (Notice of Initiation and Interim Measures).  CBP's ensuing investigation was designated EAPA Case No. 7550 (EAPA 7550).

On February 4, 2022, CBP's Trade Remedy & Law Enforcement Directorate (TRLED) issued a notice of determination of evasion, finding substantial evidence that Kingtom entered into the United States Chinese-origin aluminum extrusions that were either comingled or transshipped through Kingtom's facility in the Dominican Republic, with a claimed country of origin as the Dominican Republic.  *See* TRLED Determination.  As a result, CBP suspended or continued to suspend Kingtom's entries, rate-adjusted any previously extended entries to type 03 (AD/CVD), and continued to require single transaction bonds as appropriate.  *Id*.

Upon Kingtom's request, R&R conducted an administrative *de novo* review of the TRLED Determination.  R&R Review.  On June 29, 2022, R&R reversed TRLED's determination of evasion, finding that there is not substantial evidence on the record to support a finding of evasion   *Id*.  The AEFTC brought this action to challenge the R&R Review.

## LEGAL STANDARD

### I.     The Enforce And Protect Act

In 2016, the President signed into law The Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA), Pub. L. No. 114-125, 130 Stat. 122 (2016).  Title IV, Section 421 of TFTEA, commonly referred to as the "Enforce and Protect Act" or "EAPA," established a new CBP administrative procedure for investigating allegations of evasion of AD/CVD orders as part of the agency's efforts to ensure a level playing field for domestic industries.  *See generally* https://www.cbp.gov/sites/default/files/assets/documents/2016Oct/Trade%20Facilitation%20and%20Trade%20Enforcement%20Act%20of%202015%20-%20Overview.pdf.

Under EAPA, federal agencies or interested parties—including U.S. and foreign manufacturers, producers, exporters; certified unions or recognized unions or groups of workers; and trade or business associations in a particular industry—may submit allegations to CBP that

merchandise covered by an AD/CVD order has entered the United States through evasion.  If such allegations reasonably suggest that evasion is occurring, within 15 calendar days of receiving an allegation, CBP must initiate an investigation.  19 U.S.C. § 1517(b)(1).  Within 90 calendar days, CBP must make an initial determination of whether there is reasonable suspicion of evasion and, if so, issue interim measures, which includes the suspension and extension of liquidation for certain entries.  19 U.S.C. § 1517(e).  The EAPA statute grants CBP broad discretion to determine the investigation's scope and means, including the authority to collect and verify any information it deems necessary to make its evasion determination.  19 U.S.C. § 1517(c)(2).  CBP's regulations set forth the types, and requirements for the submission, of factual information by parties.  19 C.F.R. § 165.23.  For example, parties to the investigation may voluntarily submit information to CBP or may provide information in response to requests by CBP.  *Id.*  Parties to the investigation have 200 days from the date on which the investigation was initiated to submit factual information on the record, and 230 calendar days to submit written arguments.  *Id.*  Parties to the investigation have 15 calendar days to submit responses to other parties' written arguments.  *Id.*  Interested parties who are not parties to the investigation may provide information only in response to requests by CBP.  *Id.*

During the investigation, CBP maintains an administrative record of material obtained and considered by CBP during the investigation, as well as record information submitted by interested parties.  19 U.S.C. § 1517(c)(2); 19 C.F.R. § 165.21.  No later than 300 calendar days after the investigation's initiation, CBP is required to make a determination as to whether the administrative record contains substantial evidence to conclude that AD/CVD duties have been evaded.  19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.22.  An evasion occurs when covered merchandise is entered by a material and false document, statement, or act, or material omission,

which results in a cash deposit, security, or applicable AD or CVD amount being reduced or not

applied. 19 U.S.C. § 1517(a)(5). Interested parties are permitted to request an administrative

review of the initial determination, and CBP must complete the review and issue a final

administrative review determination no later than 60 business days after such a request. 19

U.S.C. § 1517(f). EAPA allows for judicial review in this Court of CBP's final administrative

review determination and the original determination as to evasion, provided that an action is

commenced within "30 business days" after CBP completes an administrative review under

subsection (f). 19 U.S.C. § 1517(g)(1).

## II.    Standard of Review

In reviewing CBP's determinations, this Court considers whether CBP complied with

procedures under the EAPA statute and whether, in reaching its ultimate determination on

evasion, any determination, finding, or conclusion made by CBP is arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law. 19 U.S.C. § 1517(g)(2).

"Courts look for a reasoned analysis or explanation for an agency's decision as a way to

determine whether a particular decision is arbitrary, capricious, or an abuse of discretion."

*Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998). "An abuse of

discretion occurs where the decision is based on an erroneous interpretation of the law, on factual

findings that are not supported by substantial evidence, or represent an unreasonable judgment in

weighing relevant factors." *WelCom Prods., Inc. v. United States*, 865 F. Supp. 2d 1340, 1344

(Ct. Int'l Trade 2012) (citing *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir.

2005)). "An agency action is arbitrary when the agency offers insufficient reasons for treating

similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir.

2001).

When reviewing CBP's determinations, "absent constitutional constraints or extremely compelling circumstances," this Court "will defer to the judgment of an agency regarding the development of the agency record." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) (explaining the Court's role in reviewing Commerce's antidumping duty administrative determinations).  "To do otherwise would 'run the risk of propelling the courts into the domain which Congress has set aside exclusively for the administrative agency.'" *Id.* (quoting *FPC v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976)).  Rather, "{t}he role of judicial review is limited to determining whether the record is adequate to support the administrative action." *PSC*, 688 F.3d at 761; *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) (reversing order instructing Commerce to consider extra-record information because "the trial court's order usurps agency power, undermines Commerce's ability to administer the statute entrusted to it, contradicts important principles of finality, and discourages compliance").

## ARGUMENT

### I.   R&R Properly Exercised Its Discretion To Not Apply Adverse Inferences

The AEFTC contends that R&R acted arbitrarily, capriciously, and erroneously in reversing TRLED's decision to apply adverse inferences to Kingtom for not cooperating to the best of its ability during CBP's site verification of Kingtom's facilities.  AEFTC Mot. at 14.  In particular, the AEFTC points to Kingtom's alleged threats of physical violence towards its employees to prevent them from speaking with CBP at the verification, and also to its destruction of records, as sufficient grounds for applying adverse inferences against Kingtom.  *Id*. at 15-20.  As discussed below, R&R properly exercised its discretion to not apply adverse inferences against Kingtom.

6

EAPA authorizes CBP to impose adverse inferences against certain uncooperative interested parties at its discretion.  19 U.S.C. § 1517(c)(3)(a) provides:

> If the Commissioner finds that a party or person described in clause (i), (ii), or (iii) of paragraph (2)(A) has failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information, the Commissioner *may*, in making a determination under paragraph (1), use an inference that is adverse to the interests of that party or person in selecting from among the facts otherwise available to make the determination.

Emphasis added.  *See also* 19 C.F.R. § 165.6 (CBP's regulations implementing this provision of EAPA, which echo the discretionary terms of the statute).  Thus, even if the information on the record allows CBP to find that a party did not cooperate to the best of its ability at a site verification or when responding to CBP's Request for Information (RFI), ultimately the decision whether to apply adverse inferences or not is entirely within the purview of the agency.  CBP is under no affirmative obligation to impose adverse inferences.  Nonetheless, R&R had sufficient reason to conclude that adverse inferences were not warranted here.

Contrary to the AEFTC's claim that Kingtom was uncooperative and thus deserving of adverse inferences being applied against it, R&R found that "Kingtom provided a significant amount of documentation regarding its production and business practices and hosted a verification visit by CBP officials."  R&R Review at 8; *see also* C.R. 81 (Verification Report).  Yet despite this "significant amount of documentation," TRLED nonetheless "discounted most, if not all, of the documentation and explanations provided by Kingtom."  R&R Review at 8.

The AEFTC alleges that CBP's verification visit was obstructed by "minders" from Kingtom who threatened its employees with physical violence if they cooperated with CBP.  AEFTC Mot. at 15.  Despite these troubling allegations, R&R found otherwise, noting that the administrative record "does not contain any instances where Kingtom refused to provide

requested information to CBP that Kington would otherwise have access to but did not provide." R&R Review at 8. Moreover, the AEFTC's allegations of intimidation as evidence of Kingtom's uncooperative behavior, are undercut, as R&R concluded, by "Kingtom's active participation throughout the investigation and a willingness to provide additional information voluntarily." *Id.*; *see also* Verification Report.

The AEFTC argues that adverse inferences should also have been applied here because CBP was unable to review certain records prior to 2020 that Kingtom deleted. AEFTC Mot. at 17. Although TRLED noted these deletions, and discounted Kingtom's productions as a result, *see* TRLED Determination at 18, TRLED's decision to apply adverse inferences was not predicated on these deletions; rather, it was based upon Kingtom's purported lack of cooperation during the site verification visit. *Id.* at 19. And on that score, as set forth above, R&R concluded that Kingtom actively, willingly, and voluntarily participated during the verification visit. R&R Review at 8. Thus, R&R was well within its statutory and regulatory discretion to conclude as follows: "we do not believe that Kingtom's actions warranted the application of adverse inferences and the discounting of the information Kingtom provided during the course of the investigation." *Id.*

Accordingly, CBP's decision to not apply adverse inferences on remand was not arbitrary, capricious, an abuse of discretion, nor otherwise not in accordance with law.

## II.    The Record Does Not Contain Substantial Evidence of Evasion

R&R properly determined that there is not substantial evidence of evasion. During an EAPA investigation, CBP "shall make a determination, based on substantial evidence, with respect to whether covered merchandise was entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(c)(1)(A). Substantial evidence requires that an

agency articulate "a 'rational connection between the facts found and the choice made.'" *Royal Brush Mfg., Inc. v. United States*, 545 F. Supp. 3d 1357, 1365 (Ct. Int'l Trade 2021) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  That another conclusion could rationally be drawn from the record evidence does not defeat an agency's determination.  *Id.*

As this Court has recently clarified, the "substantial evidence" standard requires CBP to explain "the evidence on which it relied and why it found the totality of that evidence supported its conclusion, and it addressed the parties' evidence and explained why it found that unconvincing." *American Pacific Plywood, Inc. v. United States,* Court No. 20-03914, 2023 WL 4288346, at *13 (Ct. Int'l Trade June 22, 2023).  Thus, "in an EAPA proceeding the court is to determine whether Customs applied the substantial evidence standard in reaching its final determination," and if so, determine whether CBP's "conclusions are not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id.*

The AEFTC maintains that purported discrepancies in Kingtom's records give rise to substantial evidence of evasion.  AEFTC Mot. at 21-30.  The AEFTC also claims that Kingtom's ties to China "provide substantial evidence that Kingtom's imports of aluminum extrusions include transshipped or commingled Chinese extrusions." *Id.* at 32.  Finally, the AEFTC contends that the R&R Review differs from other similar EAPA investigations, and this differing outcome, based upon similar administrative records, is itself arbitrary, capricious, and an abuse of discretion.  *Id.* at 33-36.  For the reasons discussed below, these arguments all fall short.

### A.  The Record Does Not Contain Widespread Discrepancies Evidencing Evasion

The AEFTC asserts that widespread discrepancies in Kingtom's records "indicate that Kingtom's submissions are unreliable and that it did not manufacture in the Dominican Republic

the aluminum extrusions imported into the United States." AEFTC Mot. at 21. Kingtom's submissions include "production, sales, employee attendance and payroll, raw material purchases/suppliers, and financial records." *Id*. at 21-22. We address these records and their purported discrepancies in turn.

*Production Records*

First, the AEFTC states that the R&R Review did not discuss the inconsistencies in the work orders examined by TRLED at CBP's site verification of Kingtom's facilities. AEFTC Mot. at 22. Although the R&R Review did not directly address this point, R&R explained that the purported discrepancies in total do not "have sufficient bearing on Kingtom's production capability and actual production, which are the determinative factors in this case, to overcome the substantial evidence demonstrating actual and significant production in the Dominican Republic." R&R Review at 11. R&R found substantial evidence that the record documentation demonstrated that Kingtom could produce the dimensions and quantities of aluminum extrusions that it imported into the United States. *Id*. at 9. Indeed, Kingtom's production capacity and abilities were observed and confirmed firsthand by CBP at the site verification. *Id*.; *see also* Verification Report. As such, any purported discrepancies in Kingtom's work orders do not detract from the otherwise substantial evidence that Kingtom produced on site the extrusions that it imported into the United States.

Next, the AEFTC maintains that Kingtom's production records indicate that its extrusion machines became [███████████████████████] set forth in its records. AEFTC Mot. at 23. While the R&R Review did not squarely discuss this point, the purported discrepancies in the production records concerned dates [████████] that preceded the period of investigation for EAPA 7550 (January 8, 2020 through February 5, 2022), and were thus outside the purview of

the EAPA investigation at issue.  TRLED Determination at 3.  In any event, R&R found, as a result of the site verification and Kingtom's production records, "1) actual production was observed, 2) the presence of claimed machinery was verified, 3) the ability of the equipment to manufacture the products exported to the United States was verified, 4) monthly production reports were provided, and 5) the differences between production versus sales/export figures have been explained."  R&R Review at 9.  R&R also noted that Kingtom's extrusion machinery did not appear inoperable or dormant at the site visit.  *Id*.  Thus, even if there was a question as to when Kingtom's machinery first became operational, the record evidence clearly demonstrates that the machinery was operational for the period of investigation at issue.

The AEFTC also points to declarations from "industry experts," one of which surmised that "Kingtom would not be able to produce all the aluminum extrusions in the necessary sizes." AEFTC Mot. at 23.  Even though the R&R Review did not address the declarations, it should not be ignored that TRLED did not base its affirmative evasion determination upon the declarations. TRLED Determination at 20.  In fact, contrary to the AEFTC's experts, TRLED specifically found at the site verification that "Kingtom appears capable of producing aluminum extrusions from the molds it claims with the machines observed at verification."  *Id*.  CBP's firsthand observations, therefore, undercut the AEFTC's experts' speculative declarations.

### *Employee Attendance and Payroll*

Next, the AEFTC lists certain inconsistencies with Kingtom's employment records that TRLED was unable to reconcile or verify, and that the R&R Review did not address.  AEFTC Mot. at 25-26.  Yet curiously, the AEFTC stops short of asserting that any such inconsistencies are in any way indicative that Kingtom made imports of its extrusions by means of evasion. Ultimately, what Kingtom's employment records are supposed to signify in the AEFTC's

estimation, is unclear.  Regardless of the particulars of Kingtom's employee records, R&R found

that Kingtom's monthly production reports adequately established the number of aluminum

extrusions that Kingtom produced in each month, and that these amounts were consistent with

the amounts that it exported to the United States.  R&R Review at 9-10.

### Raw Material Purchases/Suppliers

The AEFTC also lists purported discrepancies in Kingtom's records of its raw material

purchasers and suppliers—records that TRLED was unable to verify and the R&R Review did

not directly discuss.  AEFTC Mot. at 26-28.  Similar to its citation to Kingtom's employment

records, the AEFTC does not explain how these records demonstrate evidence of evasion.  Nor

could it.  As the R&R Review sensibly pointed out: "But raw materials are not covered by the

AD/CVD Orders.  Thus, this evidence cannot be used to support a finding of evasion."  R&R

Review at 11.  Moreover, R&R reasoned as follows:



> {W}e note that the sourcing information does not provide evidence
> of evasion.  Rather, it demonstrates that Kingtom sourced materials
> and equipment from many countries, [ ███ ] among them.
> However, and most notably, the items sourced from [ ████ ] were
> [
> ████████████████████████████████████ ].
> Therefore, if anything, the sourcing information supports
> Kingtom's position and does not provide evidence of evasion.

*Id.* at 10.  Rather than hint at the prospect of evasion, Kingtom's records point to the opposite

conclusion.

### Financial Records

Next, the AEFTC states that "TRLED also found discrepancies with respect to Kingtom's

financial records or was unable to verify certain information because Kingtom did not have the

necessary records," AEFTC Mot. at 28-29, but again stops short of drawing a throughline from

TRLED's findings to evidence of evasion.  And although R&R did not squarely address

TRLED's investigation into Kingtom's financial records, R&R found that, given the information provided by Kingtom, the record contained "substantial evidence demonstrating actual and significant production in the Dominican Republic" of aluminum extrusions in the quantities that Kingtom sold and exported to the United States.  R&R Review at 11.  Any purported discrepancies in Kingtom's financial records does not undermine this finding.

*Sales Process*

Lastly here, the AEFTC maintains that Kingtom's responses to RFIs issued by CBP and at the site verification were inconsistent insofar as Kingtom asserted that it produces custom extrusions to order, but also occasionally fills orders from its inventory.  AEFTC Mot. at 29-30.  The AEFTC speculates that by maintaining an inventory, Kingtom has the means to comingle its locally produced extrusions with Chinese-origin extrusions.  *Id*.  Setting aside the fact that there is no affirmative evidence of commingling on the record, R&R addressed this "inconsistency," explaining that:

> {W}e do not agree with the conclusions in the February 4 Determination, regarding the absence of evidence as to sales from inventory; the production reports clearly show some inventory remaining each month. However, because inventory is measured at a specific point in time, and finished goods inventory is not necessarily maintained in a condition packed ready for shipment, the fact that no packaged inventory was observed during the verification visit does not discredit the production reports.

R&R Review at 9, fn. 25.  In other words, Kingtom's made-to-order sales process would invariably result in some monthly inventory, depending on when orders are fulfilled.  Although it is unclear which customers place orders from Kingtom's inventory, it is a baseless leap to conclude that a small inventory, in and of itself, is evidence of evasion via commingling.

Taken together, these "widespread discrepancies" only suggest that Kingtom (and CBP for that matter) would be better served by more fulsome and detailed recordkeeping.  But such

inconsistencies do not reveal a transshipment scheme or undermine R&R's conclusion that the records produced by Kingtom, as well as the verification visit of Kingtom's facilities, adequately demonstrate that Kingtom produced the amount of extrusions that it exported to the United States.  Simply put, ambiguous inconsistencies in Kingtom's paperwork do not constitute substantial evidence that it imported aluminum extrusions by means of evasion.

### B.  Kingtom's Chinese Ties Do Not Evidence Evasion

The AEFTC also contends that "Kingtom's ties to China provide substantial evidence that Kingtom's imports of aluminum extrusions include transshipped or commingled Chinese extrusions."  AEFTC Mot. 32.  In particular, the AEFTC points to trade data on the record that "the significant volume of Chinese exports of aluminum extrusions to the Dominican Republic did not align with the size of the market."  *Id*. at 31.  These contentions are not supportable.

First, TRLED relied on import data supplied by the AEFTC primarily from 2018 and 2019, despite the period of investigation for EAPA 7550 spanning a different time period: January 2020 to February 2022.  AEFTC Mot. at 31; TRLED Determination at 3.  R&R correctly recognized the inapplicability of this data to the EAPA investigation at issue: "Our conclusion is further buttressed by the total lack of any record evidence of any imports by Kingtom into the Dominican Republic, during the relevant period of investigation, of aluminum extrusions manufactured in China."  R&R Review at 10.  Moreover, the AEFTC's trade data lacks any direct nexus to Kingtom as the recipient of any Chinese imports of aluminum extrusions.  "The Allegation only provided overall import data of aluminum extrusions from other countries, including China, into the Dominican Republic.  It does not show Kingtom as the importer of such goods into the Dominican Republic."  *Id*. at fn. 27.

Further, TRLED merely inferred that the extrusions imported into the United States were of Chinese origin in light of the AEFTC's import data, Kingtom's suppliers in China, and Kingtom's incomplete records, discussed in the preceding section.  TRLED Determination at 19. From such evidence, TRLED drew inferences adverse to Kingtom to conclude that Kingtom was exporting Chinese-origin aluminum extrusions to the United States.  *Id.*   By reversing TRLED's adverse inference finding, R&R concluded that this circumstantial information did not constitute substantial evidence that Kingtom imported extrusions from China, especially when the balance of record evidence demonstrated that Kingtom actually produced the extrusions that it exported to the United States.  R&R Review at 10-11; *see also id.* at 10 (noting "that the record does not show that Kingtom sourced any aluminum ingots or scrap, the main raw materials from which aluminum extrusions are created, from China.").

Ultimately, the AEFTC is left with only speculation about the possibility of transshipment, a possibility that surely exists with any foreign company that has business dealings with both China and the United States.  But these vague ties are not indicative of evasion, as R&R explained:

> Indeed, there is no dispute that Kingtom has connections to China. However, the fact that Kingtom admittedly employs Chinese workers, has Chinese ownership, and sources [ ███████ ████████████ ] from China is not evidence of evasion. This is especially so in the face of documented and observed significant manufacturing of aluminum extrusions, during the period of investigation in this case, by Kingtom, in the Dominican Republic.

R&R Review at 11.

### C.  R&R's Conclusion That There Is Not Substantial Evidence of Evasion Is Consistent With Other EAPA Investigations Into Kingtom

Finally, the AEFTC argues that the R&R Review is "arbitrary, capricious, and an abuse of discretion because the agency previously relied on similar, and overlapping, evidence to find

evasion" in EAPA Consol. Case No. 7348 (EAPA 7348) and EAPA Consol. Case No. 7423 (EAPA 7423).  AEFTC Mot. at 33; *see also id*. at 34-36.  This argument is not accurate.

EAPA 7348, at issue in *Global Aluminum Distributor LLC v. United States*, Consol. Court No. 21-00198 (*Global*), also involved aluminum extrusions exported by Kingtom and concerned very similar allegations of evasion.  After a voluntary remand by CBP to reconsider, and ultimately reverse, its affirmative duty evasion determinations, the Court sustained the uncontested remand redetermination.  Court No. 21-00198, ECF Nos. 102, 103.  Similarly, EAPA 7423, currently at issue in *H&E Home, Inc. and Classic Metals Suppliers v. United States*, Consol. Court No. 21-00337 (*H&E*), likewise involved allegations of evasion centering on aluminum extrusions exported by Kingtom.  *H&E* was also remanded to CBP to reconsider its affirmative duty evasion determinations, upon which CBP reversed R&R's affirmation of evasion and found "that there is not substantial evidence to support a finding of evasion as to the Importers."  Court No. 21-00337, ECF No. 73.  Thus, in all three EAPA actions concerning aluminum extrusions imported and/or exported by Kingtom, CBP now maintains a consistent position: that there is not substantial evidence of evasion on the record.  Although the AEFTC may disagree with the end results in these EAPA actions, the consistent and reasoned decisions by R&R after either a *de novo* administrative review or a court-ordered remand are squarely within the agency's purview to render.

We also note that even though there is overlap in the records among all three Kingtom EAPA actions, EAPA 7550 is the sole investigation to benefit from CBP's site verification of Kingtom's facilities.  *See* Verification Report.  While TRLED and R&R drew different conclusions from this visit, which is within the agency's discretion, the verification was nonetheless unique to EAPA 7550.  Thus, the sum total of information on the record in EAPA

16

7550 differs from that of EAPA 7348 and EAPA 7423.  Regardless of the similarities and differences among the records in EAPA 7550, EAPA 7348, and EAPA 7423, CBP's ultimate conclusions in all three cases is the same: there is not substantial evidence on the record that Kingtom transshipped Chinese-origin aluminum extrusions through its facilities.  Consequently, the AEFTC's argument that CBP's decision-making among the Kingtom EAPA investigations is arbitrary and capricious must be rejected.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain the R&R Review as supported by the record, not arbitrary and capricious, and otherwise in accordance with the law.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:   /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Alexander Vanderweide
Of Counsel:              ALEXANDER VANDERWEIDE
Tamari J. Lagvilava       Senior Trial Counsel
Office of Chief Counsel    Department of Justice, Civil Division
U.S. Customs and Border Protection   Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-0482 or 9230
*Attorneys for Defendant*

Dated: August 23, 2023

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this response brief contains 4778 words, excluding any materials excluded from those Procedures' requirements, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Alexander Vanderweide